## TILLMAN v. CENTINEO et al.*
### No. 15081.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Robt. B. Todd, of New Orleans, for appellant.

Dart & Dart and Leo L. Dubourg, all of New Orleans, for appellee Angelo Centineo.

WESTERFIELD, Judge.

This case results from an accident which occurred on the Jefferson Highway, near Laplace, La., on October 4, 1932, at 3 p. m. The plaintiff, Tillman, was a passenger on a one-ton Ford truck, which, at the time of the accident, was traveling from New Orleans in the direction of Laplace. When the truck reached a point about a mile and a half below that town, where there is a right angle curve in the highway, a Chevrolet truck with trailer attached, proceeding in the opposite direction, or from Laplace towards the city of New Orleans, entered the curve, and, as the Chevrolet completed the turn in the road, the trailer struck the Ford truck near the cab, with the result that Tillman was thrown to the road and injured. He brought this suit against Joseph D'Angelo, the driver of the Chevrolet truck, and Angelo Centineo, the owner, claiming $8,329.50 as damages for physical injuries alleged to have been sustained as a result of the accident.

In the court below there was judgment in plaintiff's favor for $250, and plaintiff has appealed. Defendant Angelo Centineo alone answered the appeal, seeking a reversal of the judgment.

■ It is conceded that D'Angelo, at the time of the accident, was engaged in an errand for his master and acting within the scope of his employment. It is also admitted that Tillman was a guest in the Ford truck, and there is no charge that he was guilty of contributory negligence, or had assumed any risk in connection with the errand of his host, Eugene Randall, the owner and driver of the Ford truck. On the question of liability, therefore, the sole issue is the negligence, vel non, of the driver of the Chevrolet truck.

On behalf of defendant, it is contended that the responsibility for the accident rests solely with the driver of the Ford truck, who, it is claimed, entered the curve on his left, or wrong side of the road, directly in the path of the Chevrolet truck, which was on its extreme right-hand side, and that, in order to avoid a head-on collision, the Chevrolet truck was pulled sharply to the right and into the ditch which skirts the road, but its driver was unable to avoid contact between the trailer attached to the Chevrolet truck and the Ford truck. The version of the accident given by plaintiff is that the Chevrolet and trailer approached the curve at a very rapid speed, that the pavement was wet, and that, when its driver saw the Ford truck, he drove suddenly toward his right, with the result that the trailer skidded on the wet pavement and struck the Ford.

Six eyewitnesses testified in the case, two for defendant and four for the plaintiff. Their testimony is in sharp conflict. Defendant's witnesses deny that the roadway was

*Decree amended on rehearing 159 So. 137.

wet, or that there had been any rain that day, whereas plaintiff's witnesses testified that a drizzling rain was falling at the time of the accident and that the pavement was wet and slippery. The official weather map of the United States government, which was introduced in evidence, shows that on the day of the accident there was a substantial rainfall at every station within a 50-mile radius of the scene of the accident, for example, at Reserve and Paradis, which are 10 miles away, and at New Orleans, 20 miles in another direction.

Defendant introduced some testimony to the effect that the particular trailer involved in this accident was of a new type and unusually stable, being equipped with double pneumatic tires, and that such trailers rarely skid and do not "snake" on the road. However, we are convinced from the testimony that this trailer did skid because of the excessive speed at which it was driven as it entered the sharp curve, and are of opinion that the judgment appealed from, on the question of liability, is correct.

The wide discrepancy between the amount of damages claimed by plaintiff and the amount for which judgment was given would indicate that the court, a qua, considered plaintiff's claim as grossly exaggerated. The able and industrious counsel for plaintiff, however, insists that the amount "was not inflated by one cent, but represents a conservative estimate of the damages suffered." The injuries are described as follows:

"(1) A severe bi-lateral sacro-iliac strain;

"(2) A traumatic cataract which permanently destroyed the sight of one eye;

"(3) Physical disability which still prevented him from earning a living at the time of the trial, more than a year after the accident."

Tillman had a cut or scratch over his eye and an injury to his back in the sacroiliac region. He was treated at the Charity Hospital in New Orleans during the greater part of October and November, 1932, and, according to the records of that institution, which were introduced in evidence, his back was strapped for the relief of pain in the sacroiliac region. He was discharged on November 21, 1932, as "markedly improved." In January, 1933, he was treated by a Dr. Brown, who died before the trial, and thereafter by Dr. Maurer, who treated him for a "bi-lateral sacro-iliac

strain." Dr. Maurer, who does not treat diseases of the eye, informed plaintiff that there was something the matter with his right eye, whereupon Tillman went to Dr. W. R. Buffington, an eminent eye specialist in the city of New Orleans, who found that Tillman was suffering from a cataract of the right eye, and that, in his opinion, the cataract was of traumatic origin. Dr. Buffington explained that at Tillman's age, 39 years, one does not contract senile cataract. Cataracts, the doctor said, could result from disease; diabetes, for example. He examined Tillman for evidence of disease, but found none. But, of course, Dr. Buffington could not and did not say that the cataract in Tillman's eye was due to this accident. He based his opinion upon the statements of Tillman to the effect that he had good vision before the accident and that his eyes grew gradually worse afterwards, and that he said that various tests concerning constitutional diseases which might produce cataract were made, with negative results. As the doctor puts it, "he (Tillman) said the various tests were negative. I don't know that it is a fact." Then, when asked if he had seen any records, the doctor answered in the negative.

The best that can be said of plaintiff's case in this respect is that it is plausible, but it has failed of legal certainty. Parties must establish their claims with legal certainty. A probable case will not suffice.

██ The injuries to plaintiff's back and his loss of earnings appear to us to be sufficiently established by the record, and we find that, in view of the loss of earnings and the protracted period of disability, the award of the trial court was inadequate. It may be, as defendant claims, that the condition in plaintiff's back was chronic and had existed before the accident, but, if that be true, we are satisfied that it was considerably aggravated by it, and that, since the plaintiff is shown to have worked steadily before that time and did little or no work thereafter, because of the pain in his back, we believe that a large part of his suffering since the accident is due to the injury he received. We have concluded to increase the award from $250 to $750.

Consequently, and for the reasons assigned, the judgment appealed from will be amended by increasing the sum awarded plaintiff, from $250 to $750, and, as thus amended, it is affirmed.

Amended and affirmed.